Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEWELTEX MANUFACTURING RETIREMENT PLAN,<br><br>Plaintiff,<br><br>vs.<br><br>MAXAR TECHNOLOGIES, INC., HOWELL M. ESTES, III, NICK S. CYPRUS, ROXANNE J. DECYK, JOANNE O. ISHAM, DANIEL L. JABLONSKY, C. ROBERT KEHLER, GILMAN LOUIE, L. ROGER MASON, JR., HEATHER A. WILSON, ERIC J. ZAHLER, and EDDY ZERVIGON,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jeweltex Manufacturing Retirement Plan ("Plaintiff"), on behalf of itself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through its counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for its Complaint:

## NATURE OF THE ACTION

This is an action brought by Plaintiff against Maxar Technologies, Inc. ("Maxar" or the "Company") and the members of Maxar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Maxar will be acquired by funds advised by Advent International Corporation ("Advent") through their affiliates Galileo Parent, Inc. ("Parent") and Galileo Bidco, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On December 16, 2022, Maxar issued a press release announcing entry into an Agreement and Plan of Merger dated December 15, 2022 (the "Merger Agreement") to sell Maxar to Advent. Under the terms of the Merger Agreement, each Maxar stockholder will receive $53.00 in cash for each share of Maxar common stock (the "Merger Consideration"). The Proposed Transaction is valued at approximately $6.4 billion.

3.      On January 31, 2023, Maxar filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Maxar stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan"); and (iii) the go-shop process. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Maxar's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making

a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.   The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company operates and maintains offices in this District located at 1989 Little Orchard St. Building 60 San Jose, CA 95125; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.   Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Maxar.

9.   Defendant Maxar is a Delaware corporation, with its principal executive offices located at 1300 West 120th Avenue, Westminster, Colorado 80234. The Company also operates and maintains offices located at 1989 Little Orchard St. Building 60 San Jose, CA 95125. The Company provides space solutions, and geospatial intelligence solutions in the United States, Asia, South

America, Europe, the Middle East, Australia, Canada, and internationally. Maxar's common stock trades on the New York Stock Exchange under the ticker symbol "MAXR."

10. Defendant Howell M. Estes, III ("Estes") has been Chair of the Board since 2019, and a director of the Company since 2017.

11. Defendant Nick S. Cyprus ("Cyprus") has been a director of the Company since 2017.

12. Defendant Roxanne J. Decyk ("Decyk") has been a director of the Company since 2019.

13. Defendant Joanne O. Isham ("Isham") has been a director of the Company since 2016.

14. Defendant Daniel L. Jablonsky ("Jablonsky") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2019.

15. Defendant C. Robert Kehler ("Kehler") has been a director of the Company since 2016.

16. Defendant Gilman Louie ("Louie") has been a director of the Company since 2020.

17. Defendant L. Roger Mason, Jr. ("Mason") has been a director of the Company since 2017.

18. Defendant Heather A. Wilson ("Wilson") has been a director of the Company since 2021.

19. Defendant Eric J. Zahler ("Zahler") has been a director of the Company since 2014.

20. Defendant Eddy Zervigon ("Zervigon") has been a director of the Company since 2019.

21. Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22. Founded in 1984 and based in Boston, Advent is one of the largest and most experienced global private equity investors. Advent has invested in over 400 private equity investments across 41 countries, and as of September 30, 2022, had $89 billion in assets under management. With 15 offices in 12 countries, Advent has established a globally integrated team of over 285 private equity investment professionals across North America, Europe, Latin America and Asia. Advent focuses on investments in five core sectors, including business and financial services; health care; industrial; retail, consumer and leisure; and technology. This includes investments in defense, security and cybersecurity as well as critical national infrastructure.

23. Parent is a Delaware corporation affiliated with funds managed by Advent.

24. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

25. Maxar is a provider of comprehensive space solutions and secure, precise, geospatial intelligence. The Company delivers disruptive value to government and commercial customers to help them monitor, understand and navigate our changing planet; deliver global broadband communications; and explore and advance the use of space. Maxar's unique approach combines decades of deep mission understanding and a proven commercial and defense foundation to deploy solutions and deliver insights with unrivaled speed, scale and cost effectiveness. Maxar's 4,400 team members in over 20 global locations are inspired to harness the potential of space to help Maxar's customers create a better world.

26. The Company conducts business under two operating and reportable segments: Earth Intelligence and Space Infrastructure. The Earth Intelligence segment is a global leader in high-resolution, high-accuracy Earth imagery, and other geospatial data sourced from Maxar's own

advanced satellite constellation and third-party providers to the Company's Public Sector and Enterprise customers, as well as a provider of advanced geospatial information, applications and analytic services for national security and commercial solutions. The Space Infrastructure segment is a supplier of space-based infrastructure, robotics, subsystems, and information solutions to satellite operators and government agencies.

**The Proposed Transaction**

27.   On December 16, 2022, Maxar issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> WESTMINSTER, Colo. & BOSTON--(BUSINESS WIRE)-- Maxar Technologies (NYSE:MAXR) (TSX:MAXR) ("Maxar" or the "Company"), provider of comprehensive space solutions and secure, precise, geospatial intelligence, today announced that it has entered into a definitive merger agreement to be acquired by Advent International ("Advent"), one of the largest and most experienced global private equity investors, in an all-cash transaction that values Maxar at an enterprise value of approximately $6.4 billion. Advent is headquartered in the United States and has a demonstrable track record as a responsible owner of defense and security businesses. Following the close of the transaction, Maxar will remain a U.S.-controlled and operated company.
>
> Under the terms of the definitive merger agreement, Advent has agreed to acquire all outstanding shares of Maxar common stock for $53.00 per share in cash. The purchase price represents a premium of approximately 129% over Maxar's closing stock price of $23.10 on December 15, 2022, the last full trading day prior to this announcement, an approximately 135% premium to the 60-day volume-weighted average price prior to this announcement, and a premium of approximately 34% over Maxar's 52-week high.
>
> Following the closing of the transaction, Maxar will benefit from the significant resources, operational expertise and capacity for investment provided by Advent. As a private company, Maxar will be able to accelerate investments in next-generation satellite technologies and data insights that are vital to the Company's government and commercial customers, as well as pursue select, strategic M&A to further enhance the Company's portfolio of solutions. This includes supporting the successful delivery of the new Legion satellite constellation, accelerating the launch of Legion 7 and 8 satellites and further growing the Earth Intelligence and Space Infrastructure businesses through investments in next-generation capabilities, such as advanced machine learning and 3D mapping. With approximately $28 billion invested across the defense, security and cybersecurity sectors in the last three years, Advent's portfolio companies have substantial expertise supporting many satellite and defense

platforms which serve the U.S. government and its allies as well as companies across the globe.

"This transaction delivers immediate and certain value to our stockholders at a substantial premium," said General Howell M. Estes, III (USAF Retired), Chair of Maxar's Board of Directors. "Maxar's mission has never been more important, and this transaction allows us to maximize value for stockholders while accelerating the Company's ability to deliver its mission-critical technology and solutions to customers over the near and long term."

"Today's announcement is an exceptional outcome for stockholders and is a testament to the hard work and dedication of our team, the value Maxar has created and the reputation we have built in our industry," said Daniel Jablonsky, President and CEO of Maxar. "Advent has a proven record of strengthening its portfolio companies and a desire to support Maxar in advancing our long-term strategic objectives. As a private company, we will have enhanced flexibility and additional resources to build on Maxar's strong foundation, further scale operations and capture the significant opportunities in a rapidly expanding market."

"We have tremendous respect and admiration for Maxar, its industry-leading technology and the vital role it serves in supporting the national security of the United States and its allies around the world," said David Mussafer, Chairman and Managing Partner of Advent. "We will prioritize Maxar's commitment as a core provider to the U.S. defense and intelligence communities, and allies, while providing Maxar with the financial and operational support necessary to apply its technology and team members even more fully to the missions and programs of its government and commercial customers."

"In our view, Maxar is a uniquely positioned and attractive asset in satellite manufacturing and space-based high-resolution imagery, with an incredible workforce and many opportunities ahead," said Shonnel Malani, Managing Director and global head of Advent's aerospace and defense team. "We have strong conviction in the growing need for the differentiated solutions Maxar provides, and our goal is to invest in expanding Maxar's satellite constellation as well as supporting Maxar's team to push the boundaries of innovation, ensuring mission success for its customers."

**Transaction Details**

Under the terms of the agreement, which has been unanimously approved by Maxar's Board of Directors, Maxar stockholders will receive $53.00 in cash for each share of common stock they own.

Advent has arranged committed debt and equity financing commitments for the purpose of financing the transaction, providing a high level of closing certainty. Funds advised by Advent have committed an aggregate equity contribution of $3.1 billion and British Columbia Investment Management Corporation ("BCI") is providing a minority equity investment through a committed aggregate equity contribution equal

to $1.0 billion, both on the terms and subject to the conditions set forth in the signed equity commitment letters.

The agreement includes a 60-day "go-shop" period expiring at 11:59 pm EST on February 14, 2023. During this period, the Maxar Board of Directors and its advisors will actively initiate, solicit and consider alternative acquisition proposals from third parties. The Maxar Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Maxar does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required. The Company, Advent and BCI will contemporaneously pursue regulatory reviews and approvals required to conclude the transaction.

The transaction is expected to close mid-2023, subject to customary closing conditions, including approval by Maxar stockholders and receipt of regulatory approvals. The transaction is not subject to any conditionality related to the launch, deployment or performance of Maxar's WorldView Legion satellite program. Upon completion of the transaction, Maxar's common stock will no longer be publicly listed. It is expected that Maxar will continue to operate under the same brand and maintain its current headquarters in Westminster, Colorado.

The foregoing description of the merger agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the merger agreement, which Maxar will be filing on Form 8-K.

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Maxar and Wachtell, Lipton, Rosen & Katz is serving as lead counsel to Maxar. Milbank LLP is serving as Maxar's legal advisor with respect to certain space industry and regulatory matters.

Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC are serving as financial advisors to Advent and Weil, Gotshal & Manges LLP is serving as lead counsel to Advent. Covington & Burling LLP is serving as Advent's legal advisor with respect to certain regulatory matters.

Skadden, Arps, Slate, Meagher & Flom LLP is serving as lead counsel to BCI. Freshfields Bruckhaus Deringer LLP is serving as BCI's legal advisor with respect to certain regulatory matters.

**Insiders' Interests in the Proposed Transaction**

28.     Maxar insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted

because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Maxar.

29. Notably, pursuant to the Merger Agreement, all outstanding Company stock appreciation rights ("SARs"), restricted stock units ("RSUs"), and performance stock units ("PSUs") held by Company insiders will vest and convert into the right to receive cash payments. The value of unvested equity awards held by all executive officers, other than the named executive officers, that would vest assuming that the effective time occurs on January 30, 2023, and all such executive officers experience qualifying terminations on that date is $11,967,358. The aggregate value of unvested equity awards held by all non-employee directors of Maxar that would vest if the merger occurs on January 30, 2023, is $1,664,730.

30. Moreover, in connection with the Proposed Transaction, Maxar has awarded each named executive officer a one-time cash retention bonus. The Company awarded defendant Jablonsky a retention bonus of $1,500,000, Mr. Leon Frazier a retention bonus of $700,000, Mr. James Lee a retention bonus of $650,000, Mr. Biggs Porter a retention bonus of $500,000, and Mr. Walter Scott a retention bonus of $300,000. The estimated aggregate amount of retention bonuses that will be payable to all Maxar executive officers who are not named executive officers is $1,390,000.

31. Further, if they are terminated in connection with the Proposed Transaction, Maxar's named executive officers stand to receive substantial cash severance, as set forth in the following table:

**Golden Parachute Compensation**

| Named Executive Officer | Cash ($)[1] | Equity Awards ($)[2] | Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Daniel L. Jablonsky | $8,571,350 | $26,629,359 | $82,625 | $35,283,335 |
| Biggs C. Porter | $2,750,000 | $13,366,085 | $37,021 | $16,153,106 |
| Walter S. Scott | $2,050,000 | $10,150,423 | $60,248 | $12,260,671 |
| Leon Anthony Frazier | $2,900,000 | $ 9,061,080 | $55,084 | $12,016,164 |
| James C. Lee | $2,486,000 | $ 5,982,751 | $60,607 | $ 8,529,357 |

**The Proxy Statement Contains Material Misstatements or Omissions**

32. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Maxar's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; and (iii) the go-shop process.

**Material Omissions Concerning the Company's Financial Projections**

34. The Proxy Statement omits material information regarding the Company's financial projections.

35. For example, with respect to the Company's July 2022 Base Case Forecast, October Satellite Loss Case Forecast, October 2022 Base Case Forecast, November 2022 Base Case Forecast, and November 2022 Satellite Loss Case Forecast, the Proxy Statement omits the line items underlying (i) Adjusted EBITDA and (ii) Unlevered Free Cash Flow.

36. The omission of this material information renders the statements in the "Certain Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning J.P. Morgan's Financial Analyses**

37. The Proxy Statement omits material information regarding J.P. Morgan's financial analyses.

38. The Proxy Statement describes J.P. Morgan's fairness opinion, and the various valuation analyses they performed in support of its opinion. However, the descriptions of J.P. Morgan's fairness opinion and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, Maxar's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

39. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates of 9.0% to 11.0% used in the analysis; (ii) quantification of the terminal values; (iii) quantification of Maxar's net debt; (iv) quantification of the value of certain tax credits expected to be utilized by Maxar through fiscal year 2027 and beyond; and (v) the fully diluted capitalization of Maxar.

40. With respect to J.P. Morgan's *Selected Transactions Multiples Analysis* and *Public Trading Multiples Analysis*, the individual multiples and financial metrics for each of the selected transactions and companies observed by J.P. Morgan for its analysis.

41. Without such undisclosed information, Maxar stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness

opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

42. The omission of this material information renders the statements in the "Opinion of J.P. Morgan Securities LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Go-Shop Process*

43. The Proxy Statement omits material information regarding the go-shop process.

44. For example, the Proxy Statement fails to disclose whether, in connection with the go-shop process, the Company entered into any confidentiality agreements with other third parties who may be interested in acquiring Maxar and, if so, the specific terms of those confidentiality agreements.

45. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Maxar will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about the company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan, and the go-shop process. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

51. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

53. Plaintiff repeats all previous allegations as if set forth in full.

54. The Individual Defendants acted as controlling persons of Maxar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Maxar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Maxar's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Maxar, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Maxar stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

# JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 27, 2023

**WEISS LAW**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Telephone: 404/692-7910
Facsimile: 212/682-3010

*Attorneys for Plaintiff*